**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

———————————————————————
                                                           :
KAREN ETZE,                                 :          CIVIL ACTION
                              Plaintiff,        :
                                                           :
        v.                                             :
                                                           :
KILOLO KIJAKAZI, *et al*.,            :          No. 22-32
                              Defendants.   :
———————————————————————:

**MEMORANDUM**

**PAMELA A. CARLOS**                                                    **May 26, 2023**
**U.S. MAGISTRATE JUDGE**

　　　Karen Etze seeks review, under 42 U.S.C. § 405(g), of the Social Security Commissioner's

denial of her claim for Supplemental Security Disability Benefits.  For the reasons stated below, I

affirm the Commissioner's decision and Ms. Etze's Request for Review is denied.[1]

**I.        FACTUAL AND PROCEDURAL BACKGROUND**

　　　Ms. Etze was born on October 9, 1961.[2]  She graduated high school and completed one year

of college.[3]  Ms. Etze has past relevant work as a claims specialist.[4]  On July 9, 2019,  Ms. Etze

applied for Social Security Disability Benefits, alleging disability beginning on February 15, 2019

due to post-concussion syndrome, traumatic brain injury, whiplash, cervical degenerative disc

disease, cervical radiculopathy, chronic pain, vestibular migraines, vertigo, cognitive disorder and

osteoarthritis of the hands.[5]  The Commissioner denied the claim initially on October 3, 2019 and

again upon reconsideration on July 29, 2020.[6]

　　　Ms. Etze requested a hearing to review her denial, and Administrative Law Judge Regina

L. Warren ("ALJ") conducted a telephone hearing on March 16, 2021.[7] Attorney Thomas J.

Giordano, Jr. represented Ms. Etze at the hearing, where the ALJ heard testimony from both Ms.

Etze and Vocational Expert Christine Carrozza-Slusarski ("VE").  On April 14, 2021, the ALJ found Ms. Etze to be not disabled under the Social Security Act (the "Act").[8]

### The ALJ's Decision

The Social Security Administration applies a five-step sequential analysis to determine disability under the Act.[9]  At step one, the ALJ determines whether the claimant is engaging in "substantial gainful activity" as defined by Social Security regulations.[10]  A claimant is not considered disabled if she engages in substantial gainful activity, regardless of age, education, work experience, or the severity of her physical and mental impairments.[11]  But if the claimant is not engaging in substantial gainful activity, the analysis proceeds to step two.  Here, the ALJ found Ms. Etze has not engaged in substantial gainful activity since the alleged onset date of February 15, 2019.[12]

At step two, the ALJ determines the severity of the claimant's medical or mental impairments, or combination of impairments.[13]  The claimant is not disabled if she does not "have any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities."[14]  "The step-two inquiry is a de minimis screening device to dispose of groundless claims."[15]  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's ability to work.'"[16]  If the evidence establishes more than a "slight abnormality," the "step-two requirement of 'severe' is met, and the sequential evaluation process should continue."[17]  The ALJ found Ms. Etze suffers the following severe impairments: degenerative disc disease of the cervical spine, traumatic brain injury, and vestibular dysfunction.[18]  But the ALJ also found Ms. Etze's medically determinable impairment

of post-concussive syndrome to be non-severe because it causes no more than minimal limitation in her ability to perform basic mental work activities.[19]

At step three, the ALJ determines whether the claimant's impairment or combination of impairments meet or equal one of the listed impairments in the Act[20] and whether the impairment is expected to result in death, or last, or be expected to last for a minimum period of twelve continuous months.[21]  If her impairment matches the listed impairments and meets the duration requirement, the claimant is considered disabled and the analysis ends.[22]  But the ALJ proceeds to step four if the claimant's impairments fail to match the listed impairments.[23]  The ALJ found Ms. Etze does not have an impairment or combination of impairments which meets or medically equals the severity of one of the listed impairments under the Act.[24]

At step four, the ALJ assesses, in consideration of the whole record, whether the claimant has a residual functional capacity ("RFC") to satisfy the physical and mental demands of past relevant work.[25]  RFC is the most a claimant can do, despite the limitations caused by her impairment or impairments.[26]  The ALJ found Ms. Etze has an RFC to perform light work subject to several limitations.

> [Ms. Etze] can stand for 6 hours and sit for 6 hours.  [She] is unlimited with pushing and pulling.  [She] can do no climbing of ladders, ropes or scaffolds but can occasionally perform all other postural movements.  [Ms. Etze] must avoid environmental hazards, extreme heat, extreme cold, wetness, humidity, vibration, fumes, odors, dusts, gases and poor ventilation.[27]

The ALJ stated she considered all the symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, and considered the medical opinion(s) and prior administrative medical finding(s) based on requirements of the Act.[28]

At the March 2021 hearing, the ALJ posed a hypothetical question to the VE to better ascertain Ms. Etze's ability to perform past relevant work.[29]  The ALJ asked,

> Q:  Assume a person of [Ms. Etze's] same age, education, and background who could perform light work as light is defined in the regulations.  The individual could stand and walk for six [hours], sit for six [hours], unlimited pushing and pulling.  Now posturally, the individual could perform postural activities on an occasional basis and should not climb any ladders, ropes, or scaffolds.  From a manipulative standpoint the individual could perform manipulative activities on a frequent basis.  From an environmental standpoint the individual should avoid extreme heat, cold, wetness, humidity, vibration, fumes, odors, dust, gas, poor ventilation, and unprotected heights, and hazards.  Under this hypothetical, could an individual perform the past work at least as performed?
>
> A:   Yes.[30]

The ALJ found Ms. Etze capable of performing past relevant work as a claims specialist.[31] The ALJ noted she compared the RFC assessment with the physical and mental demands of the work of a claims specialist and found Ms. Etze capable to perform those demands as actually performed.[32]  Thus, the ALJ ended her analysis here without proceeding to step five.

The ALJ concluded Ms. Etze to be not disabled.[33]  The Administration Appeals Council affirmed the ALJ's decision and denied Ms. Etze's request for review, meaning the ALJ's written opinion became the final decision of the Commissioner. [34]  Ms. Etze now timely appeals.

### *Ms. Etze's Federal Request for Review*

In her federal request for review, Ms. Etze claims (1) the ALJ failed to consider the impact of mild mental limitations on her ability to perform her skilled past relevant work; (2) the "appointment of Andrew Saul as a single Commissioner of the Social Security Administration . . . who is removable only for cause and serves a longer term than that of the President violates separation of powers," and renders the ALJ's decision constitutionally defective because the ALJ's

authority was derived from Mr. Saul; and (3) the ALJ and Appeals Council lacked legal authority to adjudicate her case as a result of their improper appointment by Nancy Berryhill.[35]  Ms. Etze requests her case be reversed and remanded for an award of benefits, or alternatively, remand to the Commissioner for a rehearing by a new properly appointed ALJ.[36]

## I.      STANDARD OF REVIEW

The court's role on judicial review is "limited" to determining whether the Commissioner's decision is supported by "substantial evidence."[37]  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[38]  This is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."[39]  Under this deferential standard,[40] we look "to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."[41]  If supported by substantial evidence, the agency's factual findings are conclusive and must be upheld.[42]  When considering a case, we "cannot conduct a *de novo* review of the Commissioner's decision no[r] can [we] reevaluate the evidence contained in the record; or impose our own factual determinations, [we] can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered."[43]

## II.     DISCUSSION

### A.     The ALJ properly accounted for Ms. Etze's mild mental limitations in her RFC assessment.

Ms. Etze contends the ALJ committed reversible error by failing to account for mild limitations of mental functioning in the RFC assessment and hypothetical question.[44]  Ms. Etze argues the "failure to include any mental functional limitations in the RFC finding and dispositive hypothetical question means that [her] mild mental limitations were not accounted for and remand is required."[45]

"[M]ild limitations in the relevant domains of mental functioning must be included in an RFC assessment and hypothetical question posed to the VE that the ALJ relies upon."[46]  But while "the findings at steps two and three are important to the ALJ's statement of a claimant's limitation[, they] do not require the use of any particular language" at steps four and five.[47]  It is well settled that "an RFC assessment does not need to contain an in-depth analysis on mental impairments when the ALJ finds earlier in [her] opinion that a claimant's mental impairments are no greater than mild."[48]  An ALJ satisfies the requirement of considering the claimant's impairments when formulating the RFC assessment when the ALJ explicitly states she has considered the entire record in her analysis.[49]

At step three, the ALJ stated Ms. Etze's "medically determinable mental impairment of post-concussive syndrome [is not severe because it] does not cause more than minimal limitation in [her] ability to perform basic mental work activities."[50]  In making this finding, the ALJ considered four broad areas of mental functioning known as "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.[51]  These areas are rated using a five-point scale: none, mild, moderate, marked, and extreme.[52]  If a limitation is rated as "mild," an ALJ will generally conclude an impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."[53]  A non-severe impairment does not significantly limit a claimant's mental ability to do basic work activities.[54]  Basic work activities are the "abilities and aptitudes necessary to do most jobs" and may include "[u]nderstanding, carrying out, and remembering simple instructions; . . . [u]se of judgment; . . . [r]esponding appropriately to supervision, co-workers and

usual work situations; and . . . [d]ealing with changes in a routine work setting."[55]  Mild limitations in these areas do not necessarily reduce a claimant's ability to perform past work or other work.[56]

In the first domain of understanding, remembering or applying information, Ms. Etze claims difficulty following instructions, remembering to take medications and make doctors' appointments.[57]  But she reported no need for special reminders to take care of her personal needs and grooming and that she is able to prepare her own meals and perform household chores.[58]  She reported the ability to use a computer, drive her car, go shopping, count change, pay bills and manage her banking.[59]  Ms. Etze's medical providers consistently found her oriented to person, place, time and situation.[60]  The ALJ found Ms. Etze to have a mild limitation in this first area of mental functioning.[61]

In the domain of interacting with others, Ms. Etze reported irritability and frustration with her health.[62]  But on mental status evaluation, Ms. Etze showed appropriate mood and affect,[63] alertness and orientation to person, pleasantness and cooperation, and intact speech and cognition.[64]  Ms. Etze is able to shop, spend time with friends, family and neighbors.[65]  The ALJ found Ms. Etze has only a mild limitation in this area.[66]

In the concentrating, persisting and maintaining pace domain, Ms. Etze alleges difficulty concentrating and completing tasks.[67]  But the ALJ found Ms. Etze to have a mild limitation in this area because she was reported to demonstrate orientation to person, place and time; the ability to drive a car, shop in stores and on the computer; and manage her banking and pay bills.[68]

In adapting or managing, Ms. Etze claims difficulty remembering, completing tasks, concentrating and following instructions.[69]  But Ms. Etze also reported the ability to drive a car and shop, prepare meals and perform household chores, pay bills, count change, handle a savings account and use her checkbook and money orders; and no problems grooming or care for personal

needs.[70]  In her medical appointments, doctors found Ms. Etze to be oriented to person, place, time and situation and to have appropriate mood and full range affect to speech and thought.[71]  The ALJ found Ms. Etze to have a mild limitation in the fourth area.[72]

The ALJ further supported these findings by evaluating the report of Ms. Etze's July 21, 2020 psychological consultative examination with Amanda Kochran-Dewey, Psy.D.[73]  In the mental status portion of the report, Dr. Kochran-Dewey noted Ms. Etze was cooperative and her manner of relating was adequate.[74]  Ms. Etze was appropriately dressed and groomed and appeared her stated age.[75]  Ms. Etze exhibited clear speech and her expressive and receptive languages were adequate.[76]  Ms. Etze's thought processes were coherent and goal directed with no evidence of hallucinations, delusions or paranoia.[77]  Ms. Etze demonstrated full range affect and appropriate speech and thought content, euthymic mood and clear sensorium.[78]  Ms. Etze was reported to be alert and oriented to person, place and time.[79]  Ms. Etze's attention, concentration, and recent and remote memory skills were intact.[80]  Dr. Kochran-Dewey reported Ms. Etze to have average intellectual functioning, her fund of information was appropriate to experience, and good insight and judgment.[81]  Dr. Kochran-Dewey did not opine to any mental health diagnoses, but did opine Ms. Etze did not have *any* mental health limitations.[82]  The ALJ found Dr. Kochran-Dewey's report unpersuasive for being inconsistent with and unsupported by objective medical evidence because the ALJ distinctly found Ms. Etze has *mild* limitations.[83]

While the ALJ did not reference the October 2019 examination report of state agency psychologist Melissa Franks, Psy.D, nor the November 2019 reconsideration report of Anthony Galdieri, Ph.D., and July 2020 reconsideration report of Dennis Gold, Ph.D., of note, each doctor opined Ms. Etze had *mild* limitations in the "paragraph B" criteria.[84]  Each doctor reported routine mental health findings and concluded Ms. Etze's mental health impairment was not severe.[85]

The ALJ concluded that in consideration of "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and the "medical opinion(s) and prior administrative medical finding(s)," Ms. Etze's medically determinable mental impairment causes no more than a minimal limitation in her ability to perform basic work activities.[86]   The ALJ noted the mild mental limitations are not an RFC assessment, but are used to evaluate the severity of mental impairments at steps two and three and a more detailed assessment was required at steps four and five.[87]   Finally, the ALJ advised her RFC assessment "reflect[ed] the degree of limitation [she] found in the 'paragraph B' function analysis."[88]

We are guided by *May v. Kijakazi* where the court found the ALJ provided adequate explanation for failing to include any limitations related to the claimant's non-severe mental impairments in her RFC assessment and hypothetical question.[89]   In *May*, the ALJ found the claimant had mild limitations in the domains of concentration, persistence and pace and adapting and managing oneself,[90] and the RFC assessment contained no limitations related to mental health.[91] While the claimant's psychological consultative examiner noted the claimant's anxious mood and mildly impaired memory and the claimant's psychiatrist report indicated anxious and depressed mood, the court stated these findings were "generally normal" and constituted substantial evidence to support the ALJ's RFC assessment.[92]   The court found no error in the ALJ's analysis.[93]

In this case, the ALJ also did not include mental health limitation language in her RFC assessment, but she similarly referenced the consultative examiner's report, finding it unpersuasive only because Dr. Kochran-Dewey opined Ms. Etze had no mental health limitations, a finding even more benign than the ALJ's own.  Additional mental health professionals who examined Ms. Etze all reported limitations of mild or less.

After review of the ALJ's decision and the administrative record, I accept the ALJ's treatment of Ms. Etze's mental impairments in the RFC assessment and hypothetical question.  The ALJ adequately addressed mental health treatment evidence and stated the evidence indicates no more than a minimal limitation in Ms. Etze's ability to do basic work activities.  While the RFC assessment contains no specific mention of Ms. Etze's mental impairments, the ALJ's RFC assessment does not, and need not, include particular language or in-depth analysis because the ALJ demonstrated her consideration of the "paragraph B" mild limitations and expressly stated she considered the entire record when devising her RFC assessment.[94]

### B.   The ALJ's decision is not constitutionally defective.

Ms. Etze asserts the government deprived her a valid administrative adjudicatory process because "the ALJ decided this case under regulations promulgated by former Commissioner Saul when Mr. Saul had no constitutional authority to issue those rules."[95]  Ms. Etze bases her argument on two recent Supreme Court cases, *Seila Law, LLC v. Consumer Financial Protection Bureau* ("CFPB") from 2020 and *Collins v. Yellen* from 2021.[96]  In *Seila Law* and *Collins*, the Supreme Court analyzed the constitutionality of a statute restricting the President's authority to remove singular heads of an executive agency.  On this basis, Ms. Etze requests remand for a de novo hearing before a new ALJ who possesses constitutional authority to hear her case.[97]  Defendants counter Ms. Etze fails to establish the required nexus between the unconstitutionality of the challenged statute delegating authority to the Commissioner of the SSA, 42 U.S.C.A. § 902(a)(3) (the "Statute"), and the denial of her claim for benefits.[98]

In *Seila Law*, the CFPB believed the business practices of law firm Seila Law, LLC violated federal law and demanded information and documents to investigate.[99]  The law firm asked the CFPB to set aside its demand, contending the agency's leadership by a singular director who is

insulated from at-will removal by the President violated the separation of powers.[100]   The challenged statute in *Seila Law* provides the rules for the formation of the CFPB as an executive agency and establishes "the position of the Director, [serving] as the head of the" CFPB who "shall be appointed by the President, by and with the advice and consent of the Senate."[101]   The director's maximum term is five years and is subject to for-cause removal by the President for "inefficiency, neglect of duty, or malfeasance in office."[102]   The Supreme Court held an executive agency's "leadership by a single individual, [whose term exceeds that of the President], removable only for inefficiency, neglect, or malfeasance violates the separation of powers."[103]

The next year in *Collins*, the Supreme Court extended its holding from *Seila Law* by declaring a "for cause" restriction of the President's power to remove a singular head of an executive agency violates separation of powers.[104]   The Supreme Court explained even when a "statute unconstitutionally limit[s] the President's authority to remove the confirmed Directors, . . . [none] of the actions taken by the [Director are] void" if the "statutorily prescribed method of appointment to that office" suffers no constitutional defect.[105]   The Supreme Court does not rule out a plaintiff's right to retrospective relief, but requires the plaintiff to demonstrate "compensable harm" resulting from the unconstitutional statute.[106]

*Seila Law* and *Collins* make it clear the removal restriction in the Statute violates separation of powers.[107]   Under the Statute, "[t]he Commissioner shall be appointed for a term of 6 years[.] . . . [and] may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office."[108]   The Statute is flawed similarly to those in *Seila Law* and *Collins*, so I agree it violates separation of powers.[109]

Regardless, Ms. Etze's claim fails because she cannot show she suffered compensable harm stemming from unconstitutionality of the Statute.  The removal provision of the Statute is severable

from the appointment provision, which is constitutionally sound.[110]  Because the Commissioner was rightfully appointed, and by extension so was the ALJ, the ALJ's actions are not void and Ms. Etze did receive a constitutionally valid adjudication process.  Even if the ALJ was improperly appointed by the Commissioner, Ms. Etze cannot show a new ALJ would find differently by nature of the new ALJ's proper appointment.

    **C.**  **The ALJ and Appeals Council adjudicated Ms. Etze's case under proper legal authority.**

Ms. Etze argues former Acting Commissioner Nancy Berryhill exceeded the statutory term limit under the Federal Vacancies Reform Act ("FVRA") when she ratified the appointment of the ALJ and Administrative Appeals Judges ("AAJs") on July 16, 2018, and therefore her appointments are invalid.[111]

Sections 3345 and 3347 of the FVRA set forth who may serve as an acting official and "the means for 'temporarily authorizing an acting official to perform the functions and duties' of a vacant executive branch position requiring Presidential appointment and Senate confirmation."[112]  This temporary authorization is limited by section 3346(a)(1), which restricts an acting official's service to "no longer than 210 days beginning on the date the vacancy occurs,"[113] or section 3346(a)(2) which states that if a nomination for the office is submitted to the Senate, "for the period that the nomination is pending in the Senate."[114]  Under the FVRA's enforcement provision, "[u]nless an officer or employee is performing the functions and duties in accordance with section 3345, 3346, and 3347 . . . the office shall remain vacant" and "only the head of such Executive agency may perform any function or duty of such office."[115]  Any action taken by an acting official not in compliance with sections 3345, 3346 and 3347 "shall have no force or effect."[116]

In December 2016, President Obama issued a memorandum providing a succession order ("Succession Memorandum") within the Administration, naming the Deputy Commissioner of

Operations ("DCO") as the first in line to serve as Acting Commissioner should there be a vacancy in the positions of Commissioner and Deputy Commissioner.[117]  When President Trump assumed the Presidency on January 20, 2017, then-Acting Commissioner Carolyn Colvin and the Deputy Commissioner stepped down and then-DCO Berryhill began serving as Acting Commissioner in conformity with the Succession Memorandum while the Commissioner and Deputy Commissioner offices remained vacant.[118]  On March 6, 2018, the Government Accountability Office (GAO) issued a notice reporting that, pursuant to section 3346(a)(1) of the FVRA, Ms. Berryhill's service as Acting Commissioner expired on November 16, 2017.[119]  Following the GAO notice, Ms. Berryhill resigned as Acting Commissioner, but continued leading the Administration as DCO.[120] In this role on July 16, 2018, Ms. Berryhill ratified the appointments of the ALJ and AAJs.[121]  On April 17, 2018, President Trump nominated Andrew Saul as the new Commissioner, an action which the Administration interpreted as allowing Ms. Berryhill to resume serving as Acting Commissioner as of that date under section 3346(a)(2) of the FVRA.[122]  Mr. Saul became Commissioner on June 17, 2019.[123]

Ms. Etze argues all of Ms. Berryhill's post November 16, 2017 actions taken as Acting Commissioner were unlawful and requests I accept the Minnesota district court decision in *Brian T.D. v. Kijakazi*.[124]  In *Brian*, the district court analyzed whether Ms. Berryhill's service period as Acting Commissioner extended beyond the section 3346(a)(1) 210-day limit until Mr. Saul's nomination in April 2018.[125]  The district court concluded it did not and held because Ms. Berryhill's 210-day term expired prior to the submission of Mr. Saul's nomination, Ms. Berryhill could not remain Acting Commissioner during the pendency of Mr. Saul's nomination, and therefore did not lawfully ratify and approve the ALJ's and AAJ's appointments in July 2018.[126]

The district court remanded the plaintiff's case for a new hearing before a properly appointed ALJ and the Commissioner appealed.[127]

We find guidance from *Dahle v. Kijakazi* where the Court of Appeals for the Eighth Circuit reversed *Brian* and resolved the ambiguity of sections 3345, 3346 and 3347.[128]  There, the Court of Appeals held the FVRA authorizes an "individual who has ceased serving [the 210-day term] under [section] 3346(a)(1) to begin serving again under [section] 3346(a)(2) once a nomination is sent to the Senate."[129]  Under this guidance, I find Ms. Berryhill's authority as Acting Commissioner resumed on the date of Mr. Saul's nomination on April 17, 2018 and until Mr. Saul assumed office on June 17, 2019.  Ms. Berryhill acted lawfully in July 2018 when she ratified the appointments of the ALJ and AAJs.  Because the ALJ and AAJs were properly appointed, their decisions are valid and I reject Ms. Etze's argument.

III.    **CONCLUSION**

For the reasons explained above, Ms. Etze's Request for Review is **DENIED**.  The ALJ's decision is supported by substantial evidence.  The ALJ adequately explained her reasoning for failing to include any limitations related to Ms. Etze's non-severe mental impairment in her RFC assessment and hypothetical question upon which she relied.

I reject Ms. Etze's assertion that Mr. Saul lacked authority to appoint the ALJ and Appeals Council members for any constitutional defect in the Statute.

Last I reject Ms. Etze's argument that former acting Commissioner Nancy Berryhill lacked authority under the FVRA to ratify the appointments of the ALJ and Appeals Council members in July 2018.  An appropriate order follows.

BY THE COURT:


*/s/ Pamela A. Carlos*_____
PAMELA A. CARLOS
U.S. Magistrate Judge

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c).  *See* ECF Doc. Nos. 2, 4.

[2] R. 64.  Citations to the administrative record will be indicated by "R." followed by the page number.

[3] R. 354.

[4] R. 55.

[5] R. 64-65.

[6] R. 15.

[7] *Id.*

[8] R. 26-27.

[9] "The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe 'medically determinable' physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of [his] past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration [his] residual functional capacity, age, education, and work experience." *Edinger v. Saul*, 432 F. Supp. 3d 516, 523 n.4 (E.D. Pa. 2020) (citing g 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v)).

[10] 20 C.F.R. § 404.1510 (Substantial gainful activity means work which involves doing significant and productive physical or mental duties and which is done or is intended to be done for profit); 20 C.F.R. § 404.1520(a)(4)(i); 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(a)(4)(i); 20 C.F.R. § 404.1520(b).

[12] R. 17.

[13] 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1520(c).

[14] 20 C.F.R. § 404.1520(c) (describing the considerations to find a severe impairment).

[15] *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546–47 (3d Cir. 2003) (citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *McDonald v. Secretary of Health & Human Services*., 795 F.2d 1118, 1124 (1st Cir. 1986)).

[16] *Newell*, 347 F.3d at 546 (citing SSR 85-28, 1985 SSR LEXIS 19, at *6-7).

[17] *Newell*, 347 F.3d at 546 (citing *Smolen*, 80 F.3d at 1290).

[18] R. 17.

[19] R. 18.

[20] 20 C.F.R. Part 404, Subpart P, Appendix 1.

[21] 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), § 404.1509.  This is defined as the "duration requirement" under the Act.

[22] 20 C.F.R. § 404.1520(a)(4)(iii).

[23] 20 C.F.R. §§ 404.1520(a)(4)(iii), (iv).

[24] R. 20.

[25] 20 C.F.R. §§ 404.1520(a)(4)(iv), § 404.1545.

[26] *Fargnoli v. Massanari*, 247 F3d 34, 40 (3d Cir. 2001) (citing 20 C.F.R. § 404.1545(a)(1)).

[27] R. 21.

[28] R. 21.

[29] R. 26; R. 54-60.

[30] R. 55-56.

[31] R. 26.

[32] *Id.*

[33] *Id.*

[34] R. 1-6.

[35] ECF Doc. No. 6 at 3.

[36] *Id.* at 17.

[37] *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); 42 U.S.C. § 405(g); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

[38] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019).

[39] *Rutherford,* 399 F.3d at 552 (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)).

[40] *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

[41] *Biestek*, 139 S. Ct. at 1154 (internal citations omitted); *see also Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) ("If substantial evidence supports the ALJ's finding, it does not matter if substantial evidence also supports Plaintiff's claims.").

[42] *See Biestek*, 139 S. Ct. at 1152 (citing 42 U.S.C. § 405(g)).

[43] *Schaffer v. Comm'r of Soc. Sec.*, No. 13-1440, 2014 WL 2094315, at *8 (W.D. Pa. May 20, 2014) (citing *Gamret v. Colvin*, 2014 WL 109089 at *1 (W.D. Pa. Jan. 10, 2014) *(*citing *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998))); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

[44] ECF Doc. No. 6 at 3-4.

[45] ECF Doc. No. 6 at 5 (emphasis omitted).

[46] *Meersand v. Kijakazi*, No. 20-4.1084, 2021 WL 5003331, at *3 (E.D. Pa. Oct. 28, 2021) (citing *Green v. Colvin*, 179 F. Supp. 3d 481, 486 (E.D. Pa. 2016)).

[47] *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 210-11 (3d Cir. 2019) (The steps two and three findings need only be adequately conveyed, not restated verbatim in the ALJ's RFC assessment); *see also Brumfield v. Saul*, No. 19-4555, 2020 WL 4934315, at *8 (E.D. Pa. Aug. 21, 2020) (affirming where ALJ found mild limitations in "paragraph B" criteria at step two and RFC assessment include no limitations regarding non-severe mental impairments).

[48] *See, e.g.*, *Holley v. Comm'r Soc. Sec.*, 590 F. App'x 167, 169 (3d Cir. 2014) (holding that when the ALJ found that claimant "had—at most—minor mental impairments," the ALJ did not err when the RFC included no mental limitations)*; see also Steltzman v. Kijakazi*, No. 22-82, 2023 WL 114053, at *13 (M.D. Pa. Jan. 5, 2023).

[49] *Northrup v. Kijakazi*, No. 20-412, 2022 WL 889968, at *5 (M.D. Pa. Mar. 24, 2022) (citing *D.C. v. Comm'r of Soc. Sec.*, No. 20-2484, 2021 WL 1851830, at *5 (D.N.J. May 10, 2021) ("[T]he ALJ further explained that his RFC assessment reflects the degree of mental limitations he found at Step 2.  Finally, the ALJ noted that in formulating the RFC, he carefully considered the entire record.  This discussion and incorporation by reference is sufficient to satisfy the requirement that the ALJ consider all of the Plaintiff's impairments in formulating the RFC.") (citing *Younge v. Berryhill*, No. 16-cv-5271, 2017 WL 2978758, at *13 (E.D. Pa. May 31, 2017))); *see also Jennifer B. v. Kijakazi*, No. 20-20364, 2022 WL 577960, at *12 (D.N.J. Feb. 25, 2022) (finding that the ALJ expressly considered mild mental limitations when crafting the RFC by referencing the limitations he found in the paragraph B mental function analysis).

[50] R. 18.

[51] R. 18-19; 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A)(2)(b).

[52] 20 C.F.R. § 404.1520a(c)(4).

[53] 20 C.F.R. § 404.1520a(d)(1).

[54] 20 C.F.R. § 404.1522(a).

[55] 20 C.F.R. § 404.1522(b).

[56] 20 C.F.R. § 404.1545(c).

[57] R. 18; R. 384.

[58] R. 18; R. 381.

[59] R. 18; R. 382.

[60] R. 18; R. 575, 1316, 1321, 1327, 1333, 1399, 1417, 1419, 1424, 1427, 2391, 2403, 2415.

[61] R. 18.

[62] R. 18; R. 1537.

[63] R. 18; R. 575, 1399, 1538, 2403, 2415.

[64] R. 18; R. 1417, 2403, 2415.

[65] R. 18; R. 382, 383.

[66] R. 18.

[67] R. 18; R. 384.

[68] R. 18; R. 382, 575, 1316, 1321, 1327, 1333, 1399, 1417, 1419, 1424, 1427, 2391, 2403, 2415.

[69] R. 18; R. 384.

[70] R. 18; R. 381-383.

[71] R. 19; R. 575, 1316, 1321, 1327, 1333, 1399, 1417, 1419, 1424, 1427, 1538, 2391, 2403, 2415.

[72] R. 19.

[73] R. 19; R 1536-1548.

[74] R. 19; R. 1537.

[75] R. 19; R. 1538.

[76] R. 19; R. 1538.

[77] R. 19; R. 1538.

[78] R. 19; R. 1538.

[79] R. 19; R. 1538.

[80] R. 19; R. 1538.

[81] R. 19; R. 1538.

[82] R. 19; R 1539-1541.

[83] R. 19.

[84] R. 69, 82, 114.

[85] R. 69, 82-83, 114.

[86] R. 19, 21.

[87] R. 19.

[88] *Id.*

[89] *May v. Kijakazi*, No. 21-4055, 2023 WL 3097652, at *19 (E.D. Pa. Apr. 26, 2023).

[90] *Id.* at *13 n.20.

[91] *Id.* at *13.

[92] *Id.* at *16.

[93] *Id.* (citing *Brumfield*, 2020 WL 4934315, at *5-6. (where the court was satisfied with the ALJ's treatment of mild mental health limitations in the RFC assessment because it was "clear that the ALJ considered all of the evidence of [the claimant's] mental health impairments and understood their impact before determining [the claimant's] RFC.").

[94] Ms. Etze also challenges the validity of the ALJ's hypothetical question posed to the VE.  ECF Doc. No. 6 at 3-4.  A hypothetical question to a vocational expert "must reflect all of the claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (emphasis added) (citing to *Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984); *Wallace v. Sec'y*, 722 F.2d 1150 (3d Cir. 1983)).  "The Third Circuit has explained that 'objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself.'"  *Durden v. Colvin*, 191 F. Supp. 3d 429, 460 (M.D. Pa. 2016) (quoting *Rutherford*, 399 F.3d at 554 n.8).  This appears to be the case here.  Ms. Etze argues the hypothetical question was defective similar to the RFC assessment for alleged failure to account for mild limitations in the four broad areas of mental functioning.  ECF Doc. No. 6 at 3-4. "Where a plaintiff contends that the VE 'testimony cannot be relied upon because the ALJ failed to recognize credible established limitations during the RFC assessment and so did not convey those limitations to the vocational expert', such are challenges to the RFC assessment itself."  *Id*. (citing *Rutherford*, 399 F.3d 546 at n.8). For the reasons discussed above, I find the ALJ's RFC assessment is supported by substantial evidence and the related hypothetical is proper.

[95] ECF Doc. No. 8 at 11-12.

[96] *See Seila Law, LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020); *Collins v. Yellen*, 141 S. Ct. 1761 (2021).

[97] ECF Doc. No. 8 at 14.

[98] ECF Doc. No. 16 at 5.

[99] *See Seila Law,* 140 S. Ct. at 2187.

[100] *Id.*

[101] 12 U.S.C.A. § 5491(b)(1)-(2).

[102] 12 U.S.C.A. § 5491(c)(1), (3).

[103] *Seila Law*, 140 S. Ct. at 2197.

[104] *Collins*, 141 S. Ct. at 1783.  The act establishing the FHFA suffered the same defect as the statute in *Seila Law*. Under the act, the FHFA is "led by a single Director who is appointed by the President with the advice and consent of the Senate," the Director would serve a five-year term and could only be removed by the President for cause.  *Collins*, S. Ct. at 1770-71; *see* 12 U.S.C.A. § 4512(a)(b).  Relying on *Seila Law*, plaintiffs sought to undo actions of the Federal Housing Finance Agency.  *Collins*, S. Ct. at 1770.  The Supreme Court said the plaintiffs "read far too much into" *Seila Law*, explaining it did not invalidate the actions of an officer with an unconstitutional term of service.  *Collins*, S. Ct. at 1788, 1788 n.23.

[105] *Collins*, 141 S. Ct. at 1787.

[106] *Id.* at 1788-89.

[107] *See Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at 1783.

[108] 42 U.S.C.A. § 902(a)(3).

[109] *See Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at 1783; see also Office of Legal Counsel, *Constitutionality of the Comm'r of Soc. Sec.'s Tenure Protection*, 2021 WL 2981542, at *7 (July 8, 2021).  *See Stamm v. Kijakazi*, 577 F.Supp.3d 358, 369 (M.D. Pa. 2021), *High v. Kijakazi*, 20-3528, 2022 WL 394750, at *6 (E.D. Pa. Feb. 9, 2022), *Candusso v. Kijakazi*, No. 21-437, 2022 WL 3447306, at *3 (W.D. Pa. Aug. 17, 2022) (all finding the Statute violated separation of powers).

[110] *See Collins*, 141 S. Ct. at 1787 (Distinguishing between the defective removal provision of the Statute from "the statutorily prescribed method of appointment.").

[111] ECF Doc. No. 6 at 16-17.

[112] 5 U.S.C.A. § 3347; *see Hernandez v. Kijakazi*, No. 22-1556, 2022 WL 17751355, at *10 (D.N.J. Dec. 19, 2022).

[113] 5 U.S.C.A. § 3346(a)(1).

[114] 5 U.S.C.A. § 3346(a)(2).

[115] 5 U.S.C.A. § 3348(b)(1)-(2).

[116] 5 U.S.C.A. § 3348(d); *see Hernandez*, 2022 WL 17751355, at *10.

[117] *See* "Memorandum Providing an Order of Succession Within the Social Security Administration," 81 Fed. Reg. 96337, 2016 WL 7487744 (Dec. 23, 2016) ("Succession Memo"); *see also Ortiz-Rivera v. Kijakazi*, No. 21-2134, 2023 WL 25353, at *13 (M.D. Pa. Jan. 3, 2023).

[118] *Ortiz-Rivera*, 2023 WL 25353, at *13.

[119] *Id.* The FVRA provides an additional ninety days to the 210-day limited under 5 U.S.C.A. § 3346(a)(1).  5 U.S.C.A. § 3346(b)(1).

[120] *Ortiz-Rivera*, 2023 WL 25353, at *13 (citing *Patterson v. Berryhill*, No. 18-193, 2018 WL 8367459, at *1 (W.D. Pa. June 14, 2018) (unpublished)).

[121] SSR 19-1p.

[122] *Ortiz-Rivera,* 2023 WL 25353, at *13 (citing *Reuter v. Saul*, No. 19-2053, 2020 WL 7222109, at *15 n.11 (N.D. Iowa May 29, 2020) (unpublished) (internal quotation marks omitted), *recommendation adopted*, 2020 WL 6161405 (N.D. Iowa Oct. 21, 2020) (unpublished)).

[123] SSA Appointment Affidavits, June 17, 2019.

[124] ECF Doc. No. 6 at 16-17; *Brian T.D. v. Kijakazi*, 580 F. Supp. 3d 615 (D. Minn. 2022).

[125] *Brian T.D.*, 580 F. Supp. 3d at 628-32.

[126] *Id*. at 629-32.

[127] *Id.* at 631-32, 636; *Dahle v. Kijakazi*, 62 F.4th 424 (8th Cir. 2023).

[128] *Dahle,* 62 F.4th at 429-430.

[129] *Id.* at 427.